222+0.   GREENWAY *v.* THE STATE.

DECIDED JUNE 14, 1932.

*J. T. Sisk,* for plaintiff in error.

*A. S. Skelton, solicitor-general,* contra.

LUKE, J. Leonard Greenway was charged with murdering Hamon Arnold by shooting him with a shotgun. The jury returned a verdict of voluntary manslaughter, and the defendant excepted upon the general grounds, and certain special grounds complaining of the charge of the court. The defendant admitted the killing, but claimed that it was done in self-defense. The homicide occurred at about nine o'clock at night at a time when Arnold was advancing upon the defendant, and after the defendant had backed

away and ordered Arnold to stop and Arnold had refused to do so.

Butler Rowland, sworn for the State, testified, that "at the time Greenway shot, the fellow was some six or eight feet from him;" that he "didn't see any motion that Arnold made towards Green-way when Greenway stumbled;" that it was so dark that witness couldn't say whether or not Arnold had anything in his hand; and that witness "stayed around there ten or fifteen minutes" and went near the body, but that he didn't see anybody find anything.

Cliff Driver, sworn for the defendant, testified, that Arnold ran towards him and Greenway; that Greenway asked Arnold what he wanted, and Arnold said, "God damn you, I want you;" that Green-way asked Arnold not to come on him, and "he kept coming;" that Greenway backed over a tub and fell down; that Arnold "run up over him with a handsaw drawn back," and Greenway shot; that witness saw that Arnold had "something," but "couldn't tell what it was, and only found out after he was killed;" that Arnold was in about two or three feet of defendant when defendant shot; that Greenway "told him five or six times not to come on him;" that witness did not know where defendant got the gun; that "you could split a man's head open" with the handsaw; and that "in the dark you couldn't tell the difference between a gun and a handsaw."

In his statement to the jury the defendant said that after Arnold had a fight with somebody in the house he came out and said: "I will see you and the other young man—I will go home after my gun;" and that defendant went to Howell's house, and "seen the gun, and got it, and come back." The defendant further stated: "He was coming bent over like, . . I told him, 'If you don't stop, I will kill you.' I saw something in his hand and didn't know what it was. I didn't know what it was until later. He run up with whatever it was, and I told him: 'Stop, Arnold, or I will kill you.' I said: 'What are you after?' He said: 'God damn you, I am after you.' I said: 'If you don't mind, you might not get me.' I stepped back off of him. I said: 'Stop, I don't want to hurt you, or I will kill you.' I fell and stumbled. I seen he was coming on. I fell on my knees, and he got nearly against me, and I shot. I had to kill him, or I thought he was going to kill me."

It does not appear from counsel's brief that the general grounds of the motion for a new trial are insisted upon. However, in any

event, we are satisfied that the evidence abundantly warrants the verdict.

Counsel for plaintiff in error expressly abandons all his special grounds except 1, 2, 3, 4, and 8.

In special ground 1 it is averred that the court committed error in charging the jury as follows: "A bare fear of any of those offenses to prevent which the homicide is alleged to have been committed shall not be sufficient to justify the killing. It must appear that the circumstances were sufficient to excite the fears of a reasonable man and that the party killing really acted under the contends that said charge "in effect instructs the jury that if the homicide . . was committed in resistance to the felonious assault which was actually being made upon the accused, it was essential to his justification that it should also appear that the killing was not done in a spirit of revenge, . . thus confusing two distinct branches of the law of self-defense involved in this case, to wit, a killing in defense of a person against whom one manifestly intends or endeavors by violence or surprise to commit a felony, . . and the doctrine of reasonable fears as set out in section 71 of the code, and making a qualification appropriate only to the latter apply to the former."

The court charged fully and separately section 70 of the Penal Code, which, among other things, states that "justifiable homicide is the killing of a human being . . in self-defense, or in defense of habitation, property, or person, against one who *manifestly intends* or endeavors, by violence or surprise, to commit a felony on either. . ." (The italics are, of course, ours.) The court next defined the word "felony." The court then instructed the jury as follows: "If the assailant intends to commit a trespass only, to kill him is manslaughter. If he intends a felony, the killing is self-defense and justifiable." Then the court gave the charge complained of, which, it will be observed, is in the language of the Penal Code (1910), § 71. Counsel for the plaintiff in error bases his contention on *Keaton* v. *State,* 99 *Ga.* 197 (25 S. E. 615). That decision so clearly draws the distinction between the two code-sections referred to that we shall quote paragraph 1 of the decision. It is as follows: "In charging concerning that part of the law of self-defense which makes it justifiable to kill another who manifestly intends or endeavors to commit a felony on the slayer, the

court should not in effect instruct the jury that if the homicide in question was committed in resistance to a felonious assault which was actually being made upon the accused, it was essential to his justification that it should also appear that the killing was not done in a spirit of revenge. It is proper, in charging as to the law of reasonable fears, to instruct the jury that where one seeks to justify a homicide upon the ground that it was committed in consequence of such fears, it must appear "that the party killing really acted under the influence of those fears, and not in a spirit of revenge. Instructions should not, however, be so given as to confuse the one with the other, or make a qualification appropriate only to the latter apply to the former."

Counsel admits in this ground that the "two distinct branches of the law of self-defense" are "involved in the case." It is perfectly apparent that where the accused slays to resist an actual, obvious attack upon his person, the requirement under section 71, that it must appear that the slayer did not act "in a spirit of revenge," has no application. We think, however, that it clearly appears from the court's instructions, that sections 70 and 71, supra, were charged separately and distinctly in the very language of the statutes, and that the two defenses were in no wise confused. We see no merit in the ground.

The other special grounds insisted upon raise the same question as the first ground. We see no occasion to set out and discuss separately the various charges complained of in those grounds. We have examined those charges carefully. Each of them refers to a charge upon the doctrine of "reasonable fears," and each of them is so framed that it clearly appears that this doctrine is applied to an apparent, and not to an actual, attack by the person killed. In no instance could the jury have been led to believe that section 70, supra, was qualified by the requirement in section 71, supra, that the slayer acted "not in a spirit of revenge." Nor is there any merit in the last special ground, numbered 8, wherein the plaintiff in error also contends that "the charge . . excluded . . the defense of the defendant that he was justified . . because the deceased was actually endeavoring to commit a felony upon his person with a weapon likely to produce death."

*Judgment affirmed. Broyles, C. J., concurs. Bloodworth, J., absent on account of illness.*